UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------
MENDEL REIZES on behalf of himself and
all other similarly situated consumers

                            Plaintiff,

          -against-


CALIBER HOME LOANS, INC.

                            Defendant.

--------------------------------------------------------

## CLASS ACTION COMPLAINT

### *Introduction*

1.    Plaintiff Mendel Reizes seeks redress for the illegal practices of Caliber Home Loans, Inc., concerning the collection of debts, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et *seq.* ("FDCPA").

### *Parties*

2.    Plaintiff is a citizen of the State of New York who resides within this District.

3.    Plaintiff is a consumer as that term is defined by Section 1692(a)(3) of the FDCPA, in that the alleged debt that Defendant sought to collect from Plaintiffs is a consumer debt.

4.    Upon information and belief, Defendant's principal place of business is located in Irving, Texas.

5.    Defendant is regularly engaged, for profit, in the collection of debts allegedly owed by consumers.

6.    Defendant is a "debt collector" as that term is defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

### *Jurisdiction and Venue*

7.   This Court has federal question jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

8.   Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts and transactions that give rise to this action occurred, in substantial part, in this district.

### *Background Facts*

9.   The Fair Debt Collection Practices Act prohibits professional debt collectors from using "false, deceptive, or misleading representations or means in connection with the collection of any debt" and from "using unfair or unconscionable means to collect" a debt. 15 U. S. C. §§1692e, 1692f. A debt collector that attempts to collect a time-barred debt in foreclosure proceedings has violated all of these prohibitions.

10.  Professional debt collectors have built a business out of buying stale debt, using foreclosure proceedings to collect it, and hoping that no one notices that the debt is too old to be enforced by the courts. This practice is unfair, unconscionable, it is also false, deceptive and misleading all in violation of §1692e and 1692f.

11.  Americans owe trillions of dollars in consumer debt to creditors—credit card companies, schools, and car dealers, among others. See *Fed. Reserve Bank of N. Y., Quarterly Report on Household Debt and Credit 3 (2017)*. Most people will repay their debts, but some cannot do so. The debts they do not pay are increasingly likely to end up in the hands of professional debt collectors—companies whose business it is to collect debts that are owed to other companies. See *Consumer Financial Protection Bur., Fair Debt Collection Practices Act: Annual Report 2016, p. 8*. Debt collection is a lucrative and growing

industry. Last year, the Nation's 6,000 debt collection agencies earned over $13 billion in revenue. Ibid.

12. Although many debt collectors are hired by creditors to work on a third-party basis, more and more collectors and servicers also operate as "debt buyers"—purchasing debts from creditors outright and attempting to collect what they can, with the profits going to their own accounts. See FTC, The Structure and Practices of the Debt Buying Industry 11-12 (2013) (FTC Report); CFPB Report 10. Debt buyers now hold hundreds of billions of dollars in consumer debt; indeed, a study conducted by the Federal Trade Commission (FTC) in 2009 found that nine of the leading debt buyers had purchased over $140 billion in debt just in the previous three years. FTC Report, at i-ii, T-3 (Table 3).

13. Because creditors themselves have given up trying to collect the debts they sell to debt buyers, they sell those debts for pennies on the dollar. Id., at 23. The older the debt, the greater the discount: While debt buyers pay close to eight cents per dollar for debts under three years old, they pay as little as two cents per dollar for debts greater than six years old, and "effectively nothing" for debts greater than 15 years old. Id., at 23-24. These prices reflect the basic fact that older debts are harder to collect. As time passes, consumers move or forget that they owe the debts; creditors have more trouble documenting the debts and proving their validity; and debts begin to fall within state statutes of limitations—time limits that "operate to bar a plaintiff's suit" once passed. CTS Corp. v. Waldburger, 573 U. S. ___, ___, 134 S. Ct. 2175, 189 L. Ed. 2d 62, 64 (2014). Because a creditor and a debt collector cannot enforce a time-barred debt in court, the debt is inherently worth very little indeed.

14.    But statutes of limitations have not deterred debt buyers and debt collectors. For years, they have filed suit in state courts to collect even debts too old to be enforced by those courts. See Holland, The One Hundred Billion Dollar Problem in Small-Claims Court, 6 J. Bus. & Tech. L. 259, 261 (2011). Importantly, the debt buyers' only hope in these cases is that consumers will fail either to invoke the statute of limitations or to respond at all. Most consumers fail to defend themselves in court, in fact, according to the FTC, over 90% fail to appear at all. FTC Report 45. The result is that debt buyers have won "billions of dollars in default judgments" simply by filing suit and betting that consumers will lack the resources to respond. Holland, supra, at 263.

15.    The FDCPA's prohibitions on "misleading" and "unfair" conduct have largely beaten back this particular practice. Every court to have considered the question has held that a debt collector that files suit in court to collect a time-barred debt violates the FDCPA. See Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013): Kimber v. Federal Financial Corp., 668 F. Supp. 1480, 1487 (MD Ala. 1987); see also Midland Funding, LLC v. Johnson, 137 S. Ct. 197 L. Ed. 2d, at 796 (majority opinion) (citing other cases).

16.    The FDCPA prohibits professional debt collectors from engaging in "unfair" and "unconscionable" practices. 15 U. S. C. §1692f. Filing a foreclosure case in state court for debt that a collector knows to be time-barred is just such a practice. The practice of filing suit in state courts to collect debts that they know are time-barred is precisely the type of practice that the FDCPA seeks to extirpate. Every court to have considered this practice holds that it violates the FDCPA.

17.  Statutes of limitations "are not simply technicalities." <u>Board of Regents of Univ. of State of N. Y. v. Tomanio</u>, 446 U. S. 478, 487, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980). They reflect strong public-policy determinations that it is unjust to fail to put an adversary on notice to defend within a specified period of time." <u>United States v. Kubrick</u>, 444 U. S. 111, 117, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979). And they "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." <u>Railroad Telegraphers v. Railway Express Agency, Inc.</u>, 321 U. S. 342, 348-349, 64 S. Ct. 582, 88 L. Ed. 788 (1944). Such concerns carry particular weight in the context of large-dollar debt collection.[1]

18.  Debt buyers' efforts to pursue stale debt in ordinary civil litigation also entraps debtors into forfeiting their time defenses altogether. When a debt collector sues or threatens to sue to collect a large debt, many consumers respond by offering a small partial payment to forestall suit. In many States, a consumer who makes an offer like this has— unbeknownst to him—forever given up his ability to claim the debt is unenforceable. That is because in most States a consumer's partial payment on a time-barred debt—or his promise to resume payments on such a debt—will restart the statute of limitations. FTC Report 47; see, e.g., <u>Young v. Sorenson</u>, 47 Cal. App. 3d 911, 914, 121 Cal. Rptr. 236, 237 (1975) ("'The theory on which this is based is that the payment is an acknowledgement on the existence of the indebtedness which raises an implied promise

---

[1] As one famously cited opinion explains: "Because few unsophisticated consumers would be aware that a statute of limitations could be used to defend against lawsuits based on stale debts, such consumers would unwittingly acquiesce to such lawsuits. And, even if the consumer realizes that she can use time as a defense, she will more than likely still give in rather than fight the lawsuit because she must still expend energy and resources and subject herself to the embarrassment of going into court to present the defense . . . ." <u>Kimber</u>, 668 F. Supp., at 1487

to continue the obligation and to pay the balance'") . Debt collectors' efforts to entrap consumers in this way are one of the industry's worst practices.

### *Allegations Particular to Mendel Reizes*

19.    Upon information and belief, on a date better known by Defendant, Defendant began to attempt to collect an alleged consumer debt from the Plaintiff.

20.    The alleged debt was originally a home loan with *HSBC Bank* ("HSBC Bank") which fell into default status sometime in 2009.

21.    HSBC Bank accelerated the note and mortgage on March 6, 2010 and HSBC Bank filed for foreclosure on June 1, 2010.

22.    The Defendant uses the instrumentality of interstate commerce and the mails in its business the principal purpose of which is the collection of consumer debts.

23.    The Defendant regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

24.    Defendant obtained this loan after it went in to default. The default on this loan occurred prior to the Defendant's servicing of the loan.

25.    Defendant is a "debt collector" under the FDCPA. Defendant collects defaulted debts as their "principal purpose" of their business.

26.    Defendant "regularly" collect debts for others and those debts are due to others.

27.    The Defendant did not own the debt it was collecting. Defendant was collecting on this debt that was due to another entity.

28.    HSBC Bank attached an exhibit (see Exhibit C) to its foreclosure complaint an acceleration letter stating that the loan was accelerated on March 6, 2010. The said exhibit was an attachment of HSBC Bank's initial acceleration letter dated February 3, 2010.

29.    The initial HSBC Bank foreclosure was dismissed on August 25, 2014. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014 SUPREME COURT | KINGS COUNTY | Index: 13517/2010.

30.    The accelerated mortgage debt became time-barred on March 6, 2016.

31.    A mortgage debt that becomes time-barred due to the expiration of the statute of limitations becomes unenforceable and loses its legal attachment to the real estate.

32.    The expiration of the statute of limitations does not invalidate the debt, but it does render the debt legally unenforceable thereby severing the debts legal attachment to any real estate.

33.    The FDCPA permits a debt collector to seek voluntary repayment of the time-barred debt so long as the debt collector does not initiate or threaten legal action in connection with its debt collection efforts.

34.    The actions of Defendant are covered under the FDCPA since the debt at issue was acquired and serviced by the Defendant after the customer defaulted on the loan in question.

35.    Upon information and belief, on a date better known by Defendant, the Creditor assigned the defaulted loan to Defendant Caliber Home Loans for collection.

36.    On or about July 20, 2017, the Defendant sent the Plaintiff a collection letter notifying him that "As of 07/20/2017, your home loan is 1967 days and $223,880.67 dollars in default."

37.    Defendant knew that on July 20, 2017 the loan was more than 2727 days in default.

38.    As mentioned above, the said loan was accelerated on March 6, 2010, which means that as of July 20, 2017, a total of two thousand six hundred and ninety two (2692) days would

have lapsed, which is equal to seven years, four months, and thirteen days.

39.   HSBC Bank sent Plaintiff an acceleration letter dated February 3, 2010. (See Exhibit C) Said acceleration letter stated "the total amount due of $3,533.96 PLUS ANY ADDITIONAL PAYMENTS, FEES AND LATER CHARGES THAT ACCUMULATE DURING THIS PERIOD, must be received within 30 days from the date of this letter. This must be in the form of certified funds only. If you do not cure this default within the specified time period your obligation for payment of the entire unpaid balance of the loan will be accelerated and become due and payable immediately."

40.   HSBC Bank accelerated the note and mortgage on March 6, 2010.  See. Deutsche Bank Natl. Tr. Co. v. Royal Blue Realty Holdings, Inc., 2017 NY Slip Op 01979, ¶ 2, 148 A.D.3d 529, 530, 48 N.Y.S.3d 597, 597 (App. Div.). ("The letters from plaintiff's predecessor-in-interest provided clear and unequivocal notice that it "will" accelerate the loan balance and proceed with a foreclosure sale, unless the borrower cured his defaults within 30 days of the letter. When the borrower did not cure his defaults within 30 days, all sums became immediately due and payable and plaintiff had the right to foreclose on the mortgages pursuant to the letters. At that point, the statute of limitations began to run on the entire mortgage debt.")

41.   On June 1, 2010 HSBC Bank filed a foreclosure and attached the February 3, acceleration letter to the foreclosure complaint which stated that the mortgage was accelerated on March 6, 2010.

42.   The foreclosure that was commenced on June 1, 2010 was dismissed by the court on August 24, 2014. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014 SUPREME COURT | KINGS COUNTY | Index: 13517/2010.

43. The dismissal of the foreclosure did not revoke HSBC's election to accelerate the debt. See. EMC Mortg. Corp. v. Patella, 279 A.D.2d 604, 606, 720 N.Y.S.2d 161, 162-63 (App. Div. 2001) ("Although a lender may revoke its election to accelerate the mortgage, the dismissal of the prior foreclosure action by the court did not constitute an affirmative act by the lender revoking its election to accelerate, and the record is barren of any affirmative act of revocation occurring during the six-year Statute of Limitations period subsequent to the initiation of the prior action (see, Federal Natl. Mtge. Assn. v Mebane, supra, at 894). Consequently, this foreclosure action is time-barred (see, CPLR 213 [4])."

44. It is well established that even if a mortgage is usually payable in monthly installments, once the entire amount becomes due, the mortgage debt is accelerated, and the Statute of Limitations begins to run on the entire debt."  See EMC Mtge. Corp. v Patella, 279 AD2d 604, 605 (2nd Dept. 2001); Wells Fargo Bank, N.A. v Burke, supra 94 AD3d at 982; *see also* Lavin v Elmakiss, 302 AD2d 638, 639(3'd Dept. 2003); Zinkerv Makler, 298 AD2d 516, 517 (3rd Dept. 2003).

45. RPAPL 1501(4) further provides that "[w]here the period allowed by the applicable statute of limitation for the commencement of an action to foreclose a mortgage . . . has expired," the mortgages legal attachment to the property is expunged and the owner of the property is granted "the cancellation and discharge of record of such encumbrance, and to adjudge the estate or interest of the plaintiff in such real property to be free therefrom."

46. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect barred the Creditor, or any debt collector, from taking or threatening to take legal action to make the Plaintiff pay this debt any time after March 6, 2016.

47.    Defendant invented a fictitious date of defult of Febuary 1, 2012 despite knowing that the accleration letter was dated for Febuary 3, 2010.

48.    Defendant fradulently attempted to re-age the debt as it invented a fictitious date of March 1, 2012 despite knowing that there was a pending forclosure during Febuary and March of 2012.

49.    Upon information and belief Defendant was aware that Seterus Inc. was the previous servicer of this account.

50.    Upon information and belief, Seterus Inc. informed Defendant that this debt became time-barred on March 6, 2016.

51.    Upon information and belief, Seterus, Inc. had informed the Defendant that Plaintiff had already sued Seterus, Inc. for collecting on this time-barred debt. Reizes et al v. Seterus, Inc. #: 1:17-cv-03162-RJD-RML (Eastern District of New York).

52.    Upon information and belief Defendant knowingly engaged in all the illegal activity mentioned in this complaint despite knowing that the fraudulent collection of this debt was being investigated by the New York State Attorney General's Office.

53.    New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

54.    When sending the July 20, 2017 collection letter to the Plaintiff, the Defendant knew that it was barred from seeking a new foreclosure action on this time-barred debt.

55.    Said July 20, 2017 letter stated in pertinent part as follows: "If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your

primary residence)."

56.   The Plaintiff understood this letter to mean that if this delinquency is not resolved, any and all available actions permitted under law to collect this debt can be pursued, including but not limited to, continued collection efforts filling of a legal action, or accrual of legal fees.

57.   This is false, since the loan became time-barred on March 6, 2016 and therefore, the filling of a legal action may not be pursued.

58.   The Defendant knew that it could only seek voluntary repayment of the time-barred debt and that it could not threaten legal action in connection with its debt collection efforts on a time-barred debt.

59.   The above-mentioned statement is false, since the loan was a time-barred debt and the filling of a legal action is not permitted under the law.

60.   This above-mentioned statement is false as other than sending a non-demanding payment letter which does not misrepresent the status or enforceability of the debt; no other available actions were permitted under the law to collect this debt.

61.   Defendant Caliber could not accumulate any legal fees with regard to this time-barred debt and certainly could not charge the Plaintiffs for the accrual of any such forbidden legal fees.

62.   The July 20, 2017 letter additionally contained several deceptive statements and omitted important mandatory disclosures, including § 2-191 of the Rules of the City of New York's notification requirement for time-barred debts.

63.   The July 20, 2017 letter said nothing about when the debt was incurred, and it contained no hint that the six-year statute of limitations applicable in New York had long since

expired.

64.    On March 6, 2010, HSBC accelerated the entire debt making the debt time-barred six

years from March 6, 2010.

65.    In the State of New York, the statute of limitations to sue on a mortgage or the note is six

years after the demand of the entire amount due.

66.    Here, Defendant Caliber had waited after the entire loan had become time barred to

threaten suit on this debt.

67.    Defendant knew that the expiration of the statute of limitations renders the debt

unenforceable thereby severing the debts legal attachment to any real estate.

68.    The Defendant knew that they could only seek voluntary repayment of the time-barred

debt and that it could not initiate or threaten legal action in connection with its debt

collection efforts on a time-barred debt.

69.    Defendant knew it was barred from seeking a new foreclosure action on this time-barred

debt.

70.    Thus, the Defendant violated 15 U.S.C. §§ 1692e, 1692e(5), 1692e(10), and 1692f by

misrepresenting the legal status and by threatening to file a time-barred suit, making it

liable to the Plaintiff.

71.    "The statute of limitations in a mortgage foreclosure action begins to run from the due

date for each unpaid installment, or from the time the mortgagee is entitled to demand full

payment, or from the date the mortgage debt has been accelerated." [2]

72.    Once a mortgage debt is accelerated by a demand for the entire amount of the loan, the

---

[2] In re Strawbridge, 2012 U.S. Dist. LEXIS 29751, 2012 WL 701031 [SDNY 2012], citing Plaia v Safonte, 45 AD3d 747, 748, 847 N.Y.S.2d 101 [2d Dept 2007]; Zinker v Makler, 298 AD2d 516, 517, 748 N.Y.S.2d 780 [2d Dept 2002]; Notarnicola v. Lafayette Farms, Inc., 288 AD2d 198, 199, 733 NYS2d 91 [2d Dept 2001]; EMC Mtge. Corp. v Patella, 279 AD2d 604, 605, 720 NYS2d 161 [2d Dept 2001]; Loiacono v. Goldberg, 240 AD2d 476, 477, 658 NYS2d 138 [2d Dept 1997])

borrower's right to make monthly installments ceases, all sums becomes immediately due and payable, and the six-year statute of limitations begins to run on the entire mortgage debt.[3]

73.    New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

74.    The unpaid installments and the entire loan that became due on March 6, 2010 and the debt became time barred on March 6, 2016.

75.    The Statute of Limitations to collect on this debt expired on March 6, 2016, therefore, misrepresenting the legal status and threatening legal action on this time-barred debt is a violation of the FDCPA.

76.    Upon information and belief, the Defendant knew that this deceptive debt collection technique would be particularly effective in pressuring unsophisticated consumers into settling debts, even those that would otherwise be time-barred.

77.    Moreover, upon information and belief, the Defendant knew that if it tricked a consumer into making just one payment on a stale, time-barred debt, the statute of limitations would restart.

78.    When collecting on a time-barred debt, a debt collector must not misrepresent the legal status of the debt in any way.

79.    When collecting on a time-barred debt, a debt collector must inform the consumer that (a) the collector cannot sue to collect the debt; and (b) providing a partial payment would revive the Defendant's ability to sue to collect the balance.

---

[3] See Federal National Mortgage Assn v Mebane, 208 AD2d 892, 894, 618 NYS2d 88 [2d Dept 1994]; Clayton Nat'l, Inc. v Guldi, 307 AD2d 982, 763 N.Y.S.2d 493 [2d Dept 2003]).

80.    The Defendant threatened and attempted to collect on a time-barred debt, whose Statute of Limitations had admittedly already run out.

81.    The language, "If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence)" is untrue and is a false threat of legal action on time-barred debt.[4]

82.    Upon reading the said letter, the Plaintiff believed, as would the unsophisticated debtor, that he had a legal obligation to pay the alleged debt as Defendant was demanding payment.

83.    The said letter falsely implies that the alleged debt is legally enforceable by making a demand for payment from the Plaintiff.

84.    It is part of the Defendant's pattern and practice to send and cause the sending of letters, such as the said letter, that seek to collect time-bared debts and to not disclose that the debts are in fact time barred, and therefore, legally unenforceable.

85.    The Federal Trade Commission ("FTC") has determined that "Most consumers do not know their legal rights with respect to collection of old debts past the statute of limitations.... When a debt collector tells a consumer that he owes money and demands payment, it may create the misleading impression that the debt collector can sue the consumer in court to collect that debt."

86.    On January 30, 2013, the FTC issued its report, The Structure and Practices of the Debt Buying Industry, available at http://www.ftc.gov/os/2013/01/debtbuyingreport.pdf. The report reaffirms its position in the United States of America v. Asset Acceptance, LLC,

---

[4] *Crawford v. LVNV Funding, LLC,* 758 F.3d 1254, 2014 U.S. App. LEXIS 13221, 59 Bankr. Ct. Dec. 205, 25 Fla. L. Weekly Fed. C 92 (11th Cir. Ala. 2014)

No. 8:12-cv-182-T-27EAJ (M.D. Fla. 2012), American Express Centurion Bank (FDIC-12-315b, FDIC- 12-316k, 2012-CFPB-0002), American Express Bank, FSB (2012-CFPB-0003) and American Express Travel Company, Inc. (2012-CFPB-0004) cases, that a defendant may violate the FDCPA by sending a collection letter demanding payment of a time barred debt without disclosing that the debt was time barred.

87.   Courts have also held that even a debt collector's mere "settlement" offer made to a consumer on a time-barred debt is misleading.[5]

88.   The language in the said letter suggests that the debt is recent enough to be legally enforceable. All circuit courts that have addressed this issue have even found the mere offer of a settlement on a time barred debt to be in violation of the FDCPA. See Daugherty v. Convergent Outsourcing, Inc., No. 15-20392, 2016 U.S. App. LEXIS 16531, at *1-2 (5th Cir. Sep. 8, 2016) ("The issue presented by this appeal is whether a collection letter for a time-barred debt containing a discounted "settlement" offer—but silent as to the time bar and without any mention of litigation—could mislead an unsophisticated consumer to believe that the debt is enforceable in court, and therefore violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692p. After receiving such a letter, the plaintiff credit card debtor sued the defendant debt collectors pursuant to the FDCPA. The district court dismissed the complaint, holding that efforts to collect time-barred debts without threatening or filing suit do not violate the FDCPA. We reverse. While it is not automatically unlawful for a debt collector to seek payment of a time-barred debt, a collection letter violates the FDCPA when its statements could mislead an unsophisticated consumer to believe that her time-barred debt is legally enforceable, regardless of whether

---

[5] See e.g., McMahon v. LVNV Funding, LLC, 744 F.3d 1010 (7th Cir. 2014).

litigation is threatened." <u>Buchanan v. Northland Grp., Inc.</u>, 776 F.3d 393, 397 (6th Cir. 2015) (same) <u>McMahon v. LVNV Funding, LLC</u>, 744 F.3d 1010, 1020 (7th Cir. 2014). (same).

89.    Defendant could have taken the steps necessary to bring its actions within compliance with the FDCPA, but neglected to do so and failed to adequately review its actions to ensure compliance with the law.

90.    Upon information and belief, Defendant sent a written communication, such as the July 20, 2017 letter to at least 50 natural persons in the State of New York within one year of the date of this Complaint.

91.    Section 1692e of the FDCPA states:

> "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of –
>
> (A) the character, amount, or legal status of any debt[.]"

92.    Sections 1692e(5) and 1692e(10) state that a debt collector cannot "threaten to take any action that is not intended to be taken" or use "any false representation or deceptive means to collect or attempt to collect any debt."

93.    The Defendant misled the Plaintiff as to what possible action might be legally taken against him and deceptively used this threat in attempting to collect on this alleged debt.

94.    In so doing, the Defendant preyed upon the ignorance of unsophisticated consumers.

95.    By employing the tactics it did, the Defendant played upon and benefitted from the probability of creating a deception.

96.    Honest disclosure of the legal unenforceability of the collection action due to the time-

lapse since the debt was incurred would have foiled Defendant's efforts to collect on the debt.

97.   By threatening to sue Plaintiff on the alleged debt, Defendant violated §§ 1692e(2)(A) and 1692(10) by threatening legal action, Defendant implicitly represented that it could recover this debt with a lawsuit, when in fact it cannot properly do so.

98.   Whether a debt is legally enforceable is a central fact about the character and legal status of that debt. A misrepresentation about that fact thus violates the FDCPA.

99.   Said letter provided a false, deceptive, or misleading representation or means in connection with the collection of any debt; the false representation of the character, amount, or legal status of any debt; and for the threat to take any action that cannot legally be taken, or that is not intended to be taken, in violation of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).[6]

100.  Said letter stated in pertinent part as follows: "If you have not taken any actions to resolve this matter within 90 days from the date this notice was mailed, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence)."

---

[6] Buchanan v. Northland Grp., Inc., 776 F.3d 393 (6th Cir. 2015). (A misrepresentation about the limitations period is a "straightforward" violation of § 1692e(2)(A). The failure to disclose that partial payment on a time-barred debt would renew the creditor's ability to sue could mislead a consumer into paying and digging herself into a deeper hole. An unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. This would not be true, since some payment is worse than no payment, as the general rule in Michigan is that partial payment restarts the statute of limitations clock, giving the creditor a new opportunity to sue for the full debt. In response to the argument that the court's interpretation would require debt collectors to give legal advice to every debtor about the statute of limitations, the court stated that "this is not a herculean task," as demonstrated by the fact that the collection agency had changed its letters to make the following disclosure under applicable circumstances: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding L.L.C. will not sue you for it, and LVNV Funding L.L.C. will not report it to any credit reporting agency."), McMahon v. LVNV Funding, L.L.C., 744 F.3d 1010 (7th Cir. 2014). (The court held that the consumers stated claims for relief under §§ 1692e and 1692f where the defendants sent dunning letters that did not disclose that the debts were time-barred and that made an "offer to settle" at a stated percentage savings off the current balance because, even without an actual threat of suit, "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable.") Rawson v. Source Receivables Mgmt., L.L.C., 2012 WL 3835096 (N.D. Ill. Sept. 4, 2012) (complaint alleging that a dunning letter implied the debt was legally enforceable when it was actually barred by the statute of limitations stated a claim under the FDCPA; defendants' letter that threatened "further collection efforts" and encouraged the plaintiff "to make arrangements for payment" could arguably lead an unsophisticated debtor to believe that the debt was legally enforceable)

101.   Said language is untrue and is a false threat of filling a legal action on time-barred debt.[7]

102.   Said language is false because any or all available actions permitted under law to collect this debt <u>do not</u> include the filling of a legal action or accrual of legal fees.

103.   The misrepresentation of the debt collector's ability to file a legal action on a time-barred debt is a violation of the FDCPA.

104.   A letter from the Defendant (see attached Exhibit A) dated November 9, 2016, indicates that the debt went into default on January 1, 2010, making the debt on July 20, 2017 a total of two thousand seven hundred and fifty seven (2757) days past due.

105.   On July 20, 2017 however, Defendant deceptively tried to re-age the time-barred debt. The Defendant intentionally attempted to re-age the date of default, thereby causing the Plaintiff to suffer actual damages.

106.   On September 14, 2017, Defendant sent the Plaintiff a collection letter. (see Exhibit A)

107.   On page 1 of 6 the said letter stated in part: "You have a right to cure the default. To cure the default, you must pay the full amount of the default on this loan by 10/19/2017 . . . If you do not correct the default by this date, Caliber Home Loans, Inc. may require that you pay immediately the entire amount then remaining unpaid under the Note and under the Security Instrument ("immediate payment in full"), and Caliber Home Loans, Inc. or another party may acquire the property by means of foreclosure and sale."

108.   Said letter states that Caliber Home Loans, Inc. or another party may acquire the property by means of foreclosure, which is false because the debt was time-barred.

109.   Furthermore, nowhere in the September 14, 2017 notice does the Defendant state the full amount of the debt.

---

[7] <u>Crawford v. LVNV Funding, LLC</u>, 758 F.3d 1254, 2014 U.S. App. LEXIS 13221, 59 Bankr. Ct. Dec. 205, 25 Fla. L. Weekly Fed. C 92 (11th Cir. Ala. 2014)

110.    Plaintiff subsequently spoke to the Defendant and was informed that he owes $619,888.36.

111.    On page 3 of 6 the Defendant states: "please note any additional monthly payments, late charges and other charges that may be due under the Note, Security Instrument and applicable law after the date of this notice must also be paid to bring your account current."

112.    The letter fails to adequately convey the "amount of the debt":

113.    This statement is false since the debt was time-barred and would not increase due to "late charges and other charges."

114.    This language violates §1692g(a)(1), which requires debt collectors to inform consumers of the amount of the debt, and § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of a debt.

115.    The language stated above violates these provisions because it fails to inform Plaintiff whether the amount listed is the actual amount of the debt due, what other interest or charges might apply and what the legal basis for these fees were.

116.    The letter does not provide any contractual explanation or information about the claimed accruing interest and charges.

117.    In order to comply with the FDCPA's provision which mandates that a collector inform the consumer in its initial communication of "the amount of the debt" the collector must give the consumer the tools in which the consumer could easily calculate the amount due on the date, he or she receives the letter.

118.    In order to comply with the FDCPA's provision which mandates that a collector inform the consumer in its initial communication of "the amount of the debt" the collector must give the consumer the tools in which the consumer could easily calculate what he or she

will need to pay to resolve the debt at any given moment in the future.

119.    The failure to provide this information or tools to ascertain "the amount of the debt" on the date of receipt of the letter or at any give other time in the future does not comply with 1692g as it fails to <u>meaningfully</u> provide "the amount of the debt".

120.    It is not enough that the collector provides "the amount of the debt" on the date of the letter. The consumer must be able to know the interest rate and be able to discern the amount of the debt at given time in the future. See <u>Taylor v. Fin. Recovery Servs., Inc.</u>, No. 17-1650-cv, 2018 BL 109391 (2d Cir. Mar. 29, 2018). ("In Carlin, we explained that a collection notice fails to satisfy Section 1692g if "it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, and an explanation of any fees and interest that will cause the balance to increase.")

121.    In <u>Carlin v. Davidson Fink LLP</u>, 852 F.3d 207, 216 (2d Cir. 2017), the Second Circuit clarified its holding in *Avila* by explaining that a collection letter "is incomplete where . . . it omits information allowing the least sophisticated consumer to determine the minimum amount she owes at the time of the notice, what she will need to pay to resolve the debt at any given moment in the future, <u>and an explanation of any fees and interest that will cause the balance to increase.</u>" (Emphasis added.)

122.    The debt in this case was time-barred and not accruing interest. If the defendants would have complied with the FDCPA amount of the debt provision it would have been forced to convey to the plaintiff that in fact, there is no legal interest rate and that the debt is time-barred and has past the statute of limitations.

123.    This language in the collection letter did not adequately state the amount of the debt, as

required under the FDCPA. In particular, the collection letter failed to specify or explain what part of the contract gave rise to interest as well as what the interest rate was or what type of charges could cause the balance to increase, nor did they inform the debtor what he or she would need to pay to resolve the debt at any given moment in the future. The letter precluded a determination of what "the amount if the debt" was on the date of receipt of the letter.

124.    The least sophisticated consumer would not understand how the fees would be calculated; what the current interest rate was and whether they could be disputed; or what provision of the underlying credit agreement gave rise to them.

125.    The collection notice included a vague disclosure without providing any "clarity as to whether new fees and costs are accruing or as to the basis for those fees and costs".[8]

126.    Similar to <u>Carlin</u>, the Collection Letter, in this case, refers with vagueness to "accrued interest or other charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, it would be impossible to conclude whether those amounts are properly part of the amount of the debt," for purposes of section 1692g.[9]

127.    Defendant Caliber knew that this debt was time-barred, and they did not and could not refer the Plaintiff to the underlying contract with the original lender. As was true in <u>Carlin</u>, the least sophisticated consumer would not understand from this reference what provision

---

[8] <u>Carlin, 852 F.3d at 217</u>
[9] <u>Carlin, 852 F.3d at 216</u>.

of the agreement, if any, gives rise to the potential "accrued interest and other charges" described in the said collection letter especially in this case where the debt was time-barred and not accruing any interest and fees.

128.    Defendant Caliber's collection letter violates sections 1692g(a)(1) and 1692e of the FDCPA, since the collection letter failed to adequately convey the "amount of the debt".

129.    The question of whether a collection letter is deceptive is determined from the perspective of the "least sophisticated consumer."

130.    While § 1692e specifically prohibits certain practices, the list is non-exhaustive, and does not preclude a claim of falsity or deception based on any non-enumerated practice.

131.    A collection letter is deceptive under 15 U.S.C. § 1692e if it can reasonably be read by the least sophisticated consumer to have two or more meanings, one of which is inaccurate.

132.    A collection letter is also deceptive under 15 U.S.C. § 1692e if it is reasonably susceptible to an inaccurate reading by the least sophisticated consumer.

133.    The letter fails to inform Plaintiff whether the amount listed is the actual amount of the debt due. This is especially problematic since the debt in this case was time-barred and not accruing interest since March 6, 2016.

134.    The letter fails to inform Plaintiff whether the amount listed already includes "late charges and other charges."

135.    The letter fails to advise Plaintiff that interest ceased on March 6, 2016.

136.    The letter fails to advise Plaintiff what portion of the amount listed is principal.

137.    The letter fails to inform Plaintiff whether the amount listed will increase.

138.    The letter fails to inform Plaintiff what "late charges and other charges" might apply.

139. The letter fails to inform Plaintiff if "late charges and other charges" are applied, when such "late charges and other charges" will be applied.

140. The letter fails to inform Plaintiff if "late charges and other charges" are applied, what the amount of those "fees and other charges" will be.

141. The letter fails to inform Plaintiff of the nature of the "late charges and other charges."

142. The letter fails to inform Plaintiff if there is accruing interest, the amount of money the amount listed will increase per any measurable period.

143. The letter fails to indicate the minimum amount Plaintiff owed at the time of the letter.

144. The letter fails to provide information that would allow the least sophisticated consumer to determine the minimum amount he or she owes at the time of the letter.

145. The letter fails to provide information that would allow the Plaintiff to determine that the debt was time-barred and not accruing interest.

146. The letter, because of the aforementioned failures, would render the least sophisticated consumer unable to determine the legal status as well as the amount of his debt.

147. The least sophisticated consumer could reasonably believe that the amount listed was accurate only on the date of the letter.

148. Although this debt is time-barred and no fees can accrue if "late charges and other charges" are continuing to accrue, the least sophisticated consumer would not know the amount of the debt because the letter fails to indicate the nature of the "fees and other charges."[10]

---

[10] Carlin v. Davidson Fink LLP, 852 F.3d 207 (2d Cir. 2017), Balke v. All. One Receivables Mgmt., No. 16-cv-5624(ADS)(AKT), 2017 U.S. Dist. LEXIS 94021, at *14 (E.D.N.Y. June 19, 2017). ("[T]he Collection Letter in this case refers with vagueness to "accrued interest or other charges," without providing any information regarding the rate of interest; the nature of the "other charges"; how any such charges would be calculated; and what portion of the balance due, if any, reflects already-accrued interest and other charges. By failing to provide even the most basic level of specificity in this regard, the Court "cannot say whether those amounts are properly part of the amount of the debt," for purposes of section 1692g.Carlin, 852 F.3d at 216. Further, as set forth in Carlin, without any clarifying details, the Collection Letter states only that these unspecified assessments may be added to the balance due, which the Court finds to be insufficient to "accurately inform[ ] the [Plaintiff] that the amount of the debt stated in the letter will increase over time.")

149.   In order to induce payments from consumers that would not otherwise be made if the consumer knew that the debt was time-barred, Defendant Caliber does not inform the consumer amount listed will never increase.

150.   In order to induce payments from consumers that would not otherwise be made if the consumer knew the debt was static and time-barred, Defendant Caliber does not inform the consumer what "late charges and other charges" would not apply.

151.   In order to induce payments from consumers that would not otherwise be made if the consumer knew that the debt was time-barred, Defendant Caliber does not inform the consumer that interest or fees can never be applied.

152.   Defendant Caliber failed to clearly and unambiguously state the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

153.   Defendant's letter falsely threated that a static time-barred debt would increase due to "late charges and other charges."

154.   The Defendant's letter would likely make the least sophisticated consumer uncertain as to the amount of the time-barred debt, in violation of 15 U.S.C. § 1692g(a)(1).

155.   The letter would likely make the least sophisticated consumer confused as to the amount of the debt, in violation of 15 U.S.C. § 1692g(a)(1).

156.   Defendant's conduct constitutes a false, deceptive and misleading means and representation in connection with the collection of the debt, in violation of 15 U.S.C. § 1692e.

157.   The letter can reasonably be read by the least sophisticated consumer to have two or more meanings concerning the actual balance due, one of which must is inaccurate, in violation of 15 U.S.C. § 1692e.

158.   Defendant's conduct violated 15 U.S.C. §§ 1692g(a)(1) and 1692e.

159.   The letter further states "Failure to respond to this letter will result in the loss of your property."

160.   Such language was false because the debt was time-barred.

161.   In page 4 of 6 the letter states: You are notified that this default and any other legal action that may occur as a result thereof may be reported to one or more local and national credit reporting agencies by Caliber Home Loans, Inc.

162.   The said language is in violation if the FDCPA since the Defendant is threatening legal action on a time-barred debt and further threatening to credit report on a time-barred debt.

163.   Subsequent to sending the above-mentioned collection letter Caliber Home Loans, Inc hired Rosicki, Rosicki & Associates, P.C. to file a fraudulent foreclosure on the time-barred debt.

164.   The FDCPA applies to the litigating activities of lawyers, and Caliber Home Loans, Inc., is bound by the acts of its lawyer-agent Rosicki, Rosicki & Associates, P.C.

165.   Caliber Home Loans, Inc is vicariously liable for its attorney's actions under the FDCPA. Caliber Home Loans, Inc exercised control over the conduct and activities of Rosicki, Rosicki & Associates, P.C.

166.   The undisputed evidence shows that Rosicki, Rosicki & Associates, P.C. filed the fraudulent and time-barred Collection Lawsuit at the instruction of Caliber Home Loans, Inc.

167.   Caliber Home Loans, Inc. colluded with and instructed Rosicki, Rosicki & Associates, P.C., to file the time-barred Collection Lawsuit.

168.    Caliber Home Loans, Inc. schemed together with its agent Rosicki, Rosicki & Associates, P.C. to misrepresent the legal status of Plaintiff's debt and in order to effectively steal plaintiffs home.

169.    The documents attached to the fraudulent and time-barred Collection Lawsuit identify Rosicki, Rosicki & Associates, P.C as the Attorneys for Caliber Home Loans, Inc.,

170.    Caliber Home Loans, Inc. knew that this debt was time-barred, and it hired and instructed its agent Rosicki, Rosicki & Associates, P.C to abuse the legal process and file fraudulent documents with the Supreme Court of the State of New York in an attempt to steal more than six hundred thousand dollars from the Plaintiff.

171.    Caliber Home Loans, Inc schemed and colluded with Rosicki, Rosicki & Associates, P.C., to misrepresent the legal status of Plaintiff's debt despite knowing that the debt was time-barred.

172.    Rosicki, Rosicki & Associates, P.C. was acting within the scope of its authority and at the direct instruction of its client Caliber Home Loans, Inc.

173.    At all times Rosicki, Rosicki & Associates, P.C. was acting within the scope of its authority and instruction of its client.

174.    Caliber Home Loans, Inc schemed, instructed and exercised actual control over all of the following actions of Rosicki, Rosicki & Associates, P.C.

175.    Caliber's lawyer-agent Rosicki were the attorneys representing HSBC Bank in the initial foreclosure. See. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014 SUPREME COURT | KINGS COUNTY | Index: 13517/2010

176.    Caliber's lawyer-agent Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly and at the instruction of Caliber

Home Loans, Inc fraudulently commenced the second foreclosure (Index: 523467/2017) despite being counsel on the initial foreclosure.

177. Caliber's lawyer-agent Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly and at the instruction of Caliber Home Loans, Inc fraudulently commenced the second foreclosure (Index: 523467/2017) despite knowing that this debt was time-barred and that it would be illegal to file a foreclosure on a time-barred debt.

178. Caliber's lawyer-agent Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly and at the instruction of Caliber Home Loans, Inc commenced the second foreclosure (Index: 523467/2017) despite knowing that the first foreclosure was dismissed.

179. Caliber's lawyer-agent Rosicki was counsel of record for HSBC Bank in the initial foreclosure (Index: 13517/2010) and they knowingly and at the instruction of Caliber Home Loans, Inc fraudulently commenced the second foreclosure (Index: 523467/2017) which knowingly and fraudulently stated in Paragraph 14 "That no prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument."

180. Upon information and belief, Defendant was additionally aware that Seterus Inc. was the previous servicer of this account.

181. Upon information and belief Seterus Inc. informed Defendant that this debt became time-barred on March 6, 2016.

182. Upon information and belief Seterus, Inc. had informed the Defendant that Plaintiff had already sued Seterus, Inc. for collecting on this time-barred debt. <u>Reizes et al v. Seterus,</u>

Inc. #: 1:17-cv-03162-RJD-RML (Eastern District of New York).

183.    Upon information and belief, Defendant knowingly engaged in all the illegal activity

mentioned in this complaint despite knowing that the fraudulent collection of this debt

was being investigated by the New York State Attorney General's Office.

184.    At the instruction of Caliber Home Loans, Inc Caliber's lawyer-agent Rosicki sent Plaintiff

a letter dated November 10, 2017 (See Exhibit G) which stated "The present amount of

the debt as of November 10, 2017 is $587,871.60 consisting of: principal balance of

$392,715.02; accrued interest of $130,398.28; late charges of $2,993.64; Escrow balance

of $59,439.74; Broker's Price Opinion, inspection and miscellaneous charges of $415.00;

Attorney Fees of 1,485.00; Search of $425.00. Since the payment of the debt will fully

satisfy the loan, it is greater than the total to reinstate the loan."

185.    Plaintiff received the letter on November 15, 2017.  On December 11, 2017, the Plaintiff

subsequently sent a dispute letter via facsimile, (see Exhibit B) wherein the Plaintiff again

notified Caliber's lawyer-agent Rosicki that the said home loan has become time-barred

on March 6, 2016. The dispute letter attached stated:

> **"I received a letter from your firm on November 15th in which you
> reference the above mentioned loan. Please be advised that this debt is
> disputed. The loan referenced above has become time barred on
> March 6th 2016. On March 6, 2016, the Statute of Limitations ran out
> on this debt making this debt time-barred, which in effect bars the
> Creditor, or any debt collector including your law-firm, from taking
> or threatening to take legal action to make me pay this debt any time
> after March 6, 2016. This letter should put your firm on notice that
> taking or threatening to take any legal action on this time barred debt
> will violate the FDCPA and make your firm liable for actual and treble
> damages. Filing a foreclosure on this debt is illegal. If your firm
> decides to sue for foreclosure despite being put on notice by this letter
> that any such action is illegal we will additionally sue your firm for
> fraud."**

186.    HSBC Bank accelerated the note and mortgage on March 6, 2010 and again demanded

the full accelerated loan amount on June 1, 2010. (see Exhibit C)

187.    The foreclosure that was commenced on June 1, 2010 was dismissed by the court on August 25, 2014. The dismissal of the foreclosure did not revoke HSBC's election to accelerate the debt.

188.    On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect barred the Creditor any debt collector, from taking or threatening to take legal action to make the Plaintiff pay this debt any time after March 6, 2016.

189.    New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

190.    Despite being counsel of record for HSBC Bank and despite knowing that this debt became time-barred on March 6, 2016, on December 6, 2017, Caliber's lawyer-agent Rosicki at the instruction of Caliber Home Loans, Inc unlawfully misrepresented the legal status of the debt as they filed for foreclosure in the Supreme Court of the State of New York, Kings County. (See Exhibit D)

191.    Caliber's lawyer-agent Mitchell an attorney who acted on behalf of the Caliber Home Loans, Inc and was the attorney who signed the Certificate of Merit. (see Exhibit E) and falsely stated therein, "I certify that there is a reasonable basis for the commencement of this action … I am aware of my obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130."

192.    Caliber's lawyer-agent Mitchell knowingly misrepresented the date of default and fraudulently re-aged the time barred debt.

193.    Caliber's lawyer-agent Rosicki invented a fictitious date of defult of Febuary 1, 2012

despite knowing that the accleration letter was dated for Febuary 3, 2010.

194. Caliber's lawyer-agent Rosicki fradulently attempted to re-age the debt as they invented a fictitious date of March 1, 2012 despite knowing that there was a pending forclosure during Febuary and March of 2012.

195. Caliber's lawyer-agent Suttell, also an attorney, signed the Request for Judicial Intervention the ("RJI") (see Exhibit F) and falsely stated therein, "I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING."

196. Caliber's lawyer-agent Rosicki were counsel of record on the initial foreclosure and they knew that there was a previous foreclosure action initiated to collect on this debt.

197. Caliber's lawyer-agent Suttel knew that she was perjuring herself when she made this false statement to the court that there were no other foreclosure actions to collect on this debt.

198. Caliber's lawyer-agent Mitchell knew his obligations under New York Rules of Professional Conduct (22 NYCRR Part 1200) and 22 NYCRR Part 130 and despite these obligations he falsely and fraudulently stated that "I certify that there is a reasonable basis for the commencement of this action".

199. Caliber's lawyer-agent Mitchell knew that he was perjuring himself when he filed a fraudulent complaint that contained numerous false statements and then coupled with this fraud on the court further stated that "I certify that there is a reasonable basis for the commencement of this action."

200. Caliber's lawyer-agent Rosicki knowingly committed fraud on the state court in an attempt

to steal the Plaintiff's home.

201.    Caliber's lawyer-agent Rosicki knowingly committed fraud on the state court in an attempt to steal over six hundred thousand dollars.

202.    Caliber's lawyer-agent Rosicki committed fraud in state court in an attempt to steal the Plaintiff's home as well as over six hundred thousand dollars.

203.    Caliber's lawyer-agent Rosicki's main practice is foreclosure law and they were HSBC Bank's counsel in the initial foreclosure and at the instruction of Caliber Home Loans, Inc they knowingly and fraudulently filed a second foreclosure despite knowing that that the loan was time-barred and that a mortgage debt that becomes time-barred due to the expiration of the statute of limitations becomes unenforceable and loses its legal attachment to the property.

204.    Caliber Home Loans Inc and its lawyer-agent Rosicki were given multiple opportunities to stop their fraudulent activity.

205.    Caliber's lawyer-agents Suttell and Mitchell continuously and knowingly engaged in this fraudulent scheme despite being put on notice yet again by Plaintiff's letter that this debt was time-barred and that any further legal action would be fraudulent.

206.    The Plaintiff's dispute letter sent on December 11, 2017 attached (Exhibit B) specifically stated:

> **"Please be advised that this debt is disputed. The loan referenced above has become time barred on March 6th 2016. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect bars the Creditor, or any debt collector including your law-firm, from taking or threatening to take legal action to make me pay this debt any time after March 6, 2016. This letter should put your firm on notice that taking or threatening to take any legal action on this time barred debt will violate the FDCPA and make your firm liable for actual and treble damages. Filing a foreclosure on this debt is illegal. If your firm decides to sue for**

**foreclosure despite being put on notice by this letter that any such action is illegal we will additionally sue your firm for fraud.**"

207. Caliber Home Loans Inc. and its lawyer-agent Rosicki have had ample opportunity to dismiss the fraudulent complaint with prejudice.

208. Caliber Home Loans Inc. and its lawyer-agent Rosicki knew that the expiration of the statute of limitations renders the debt unenforceable thereby severing the debts legal attachment to any real estate.

209. Caliber Home Loans Inc. and its lawyer-agent Rosicki knew that they could only seek voluntary repayment of the time-barred debt and that they could not initiate or threaten legal action in connection with its debt collection efforts on a time-barred debt.

210. Caliber Home Loans Inc. and its lawyer-agent Rosicki knew they were barred from seeking a new foreclosure action on this time-barred debt.

211. Said lawsuit fraudulently stated in pertinent part as follows:

**"NOTICE**
**YOU ARE IN DANGER OF LOSING YOUR HOME"**
**If you do not respond to this summons and complaint by serving a copy of the answer on the attorney for the mortgage company who filed this foreclosure proceeding against you and filing the answer with the court, a default judgment may be entered and you can lose your home."**

212. Not only did the Caliber's lawyer-agent Rosicki threaten legal action on a time-barred debt, it actually engaged in such fraudulent action and abuse of process at the instruction of defendant Caliber.

213. Paragraph 14 of the said Complaint falsely and fraudulently stated: "That no prior action was commenced at law or otherwise for the recovery of the sum or any part thereof secured by the said instrument."

214. Fraudulent fillings are not exempt from liability under the FDCPA.

215.    The Second Circuit specifically found that fraudulent statements when made in a lawsuit violate the FDCPA.

216.    "[A]ctions taken in furtherance of a lawsuit are not exempt from liability under the FDCPA" <u>DiMatteo v. Sweeney, Gallo, Reich & Bolz, LLP</u>, 619 Fed. Appx. 7 (2d Cir. 2015)

217.    "Under these circumstances, where court filings "routinely come to the consumer's attention and may affect his or her defense of a collection claim," debt collectors do not have immunity from FDCPA liability for their litigation conduct," <u>Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP</u>, 875 F.3d 128, 137, 2017 BL 407422, 8 (2d Cir. 2017) (citations omitted)

218.    These statements as well as all the other fraudulent statements made in the complaint were made as a fraud on the state court in violation of the FDCPA.

219.    Caliber Home Loans Inc. and its lawyer-agent Rosicki actively participated in the preparation and filing of multiple court submissions to the state court which contained false and misleading statements.

220.    These false statements were part of an intentional pattern of collusion, wrongdoing, and deceit which was done with the intent to deceive both the Plaintiff and the New York Supreme Court.

221.    This misconduct was committed in an attorney capacity and these actions were a means to the accomplishment of a larger fraudulent scheme by Caliber Home Loans Inc and their lawyer-agent Rosicki.

222.    Said statements are unconscionably false and were made with the intention to deceive and steal Plaintiff's home as well as hundreds of thousands of dollars.

223.  Caliber Home Loans Inc. and its lawyer-agent Rosicki knew that these statements and legal action were fraudulent as they were counsel on the previous case that was dismissed. HSBC MORTGAGE CORPORATION USA v. REIZES, MENDEL - DISPOSED: 8/24/2014 SUPREME COURT | KINGS COUNTY | Index: 13517/2010.

224.  Caliber Home Loans Inc. and its lawyer-agent Rosicki was again further put on notice by the Plaintiff's fax that this debt was time-barred. Caliber Home Loans Inc. and its lawyer-agent Rosicki were warned and given multiple opportunities not to engage in fraud.

225.  The Plaintiff's dispute letter sent on December 11, 2017 attached (Exhibit B) specifically stated:

> "**Please be advised that this debt is disputed. The loan referenced above has become time barred on March 6th 2016. On March 6, 2016, the Statute of Limitations ran out on this debt making this debt time-barred, which in effect bars the Creditor, or any debt collector including your law-firm, from taking or threatening to take legal action to make me pay this debt any time after March 6, 2016. This letter should put your firm on notice that taking or threatening to take any legal action on this time barred debt will violate the FDCPA and make your firm liable for actual and treble damages. Filing a foreclosure on this debt is illegal. If your firm decides to sue for foreclosure despite being put on notice by this letter that any such action is illegal we will additionally sue your firm for fraud**."

226.  Since the loan became time-barred on March 6, 2016, Caliber Home Loans Inc. and its lawyer-agent Rosicki knowingly mispresented the legal status of this time-barred debt which violated the FDCPA and they further violated the FDCPA by intentionally filling a fraudulent legal action which they knew could <u>not</u> be pursued.

227.  Since the loan was a time-barred debt, the filling of a legal action is not permitted under the law.

228.  Caliber Home Loans Inc. and its lawyer-agent Rosicki filed a fraudulent action in violation of the FDCPA.

229. The letter dated November 10, 2017 failed to include a notice which would clearly state per New York law that the debt was time-barred.

230. Caliber Home Loans Inc. and its lawyer-agent Rosicki violated the FDCPA for misrepresenting the legal status of the debt and for using fraudulent means in attempting to collect on a time-barred debt.

231. Caliber Home Loans Inc and their lawyer-agent Rosicki misrepresented the legal status of the debt and they falsely threatened the imposition of interest and fees on a time-barred debt in violation of the FDCPA.

232. Caliber Home Loans Inc. and its lawyer-agent Rosicki could not misrepresent the status or enforceability of the debt. Caliber Home Loans Inc. and its lawyer-agent Rosicki knew that no other available actions were permitted under the law to collect this debt.

233. Caliber Home Loans Inc. and its lawyer-agent Rosicki could not accumulate any interest or legal fees with regard to this time-barred debt and certainly could not charge the Plaintiff for the accrual of any such forbidden interest and fees.

234. The letter and the foreclosure action additionally contained numerous deceptive statements and knowingly omitted the important mandatory disclosures, including § 2-191 of the Rules of the City of New York's notification requirement for time-barred debts.

235. The letter dated November 10, 2017 said nothing about when the debt was incurred, and it contained no hint that the six-year statute of limitations applicable in New York had long since expired.

236. On March 6, 2010, HSBC Bank accelerated the entire debt making the debt time-barred six years from March 6, 2010.

237. In the State of New York, the statute of limitations to sue on a mortgage or the note is six

years after the demand of the entire amount due.

238.    Caliber Home Loans Inc. and its lawyer-agent Rosicki had waited after the entire loan had become time-barred to threaten and illegally file suit on this debt.

239.    Caliber Home Loans Inc. and its lawyer-agent Rosicki misrepresented the legal status of the debt in violation of section 1692e, which prohibits a debt collector from "threatening to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5).

240.    Congress in passing the FDCPA prohibited threatening to take any illegal action when collecting debts. All courts that have addressed this issue have concluded that the additional step of actually taking the illegal action is most definitely a violation of the FDCPA.[11]

241.    Filing a suit to collect on a debt for which the statute of limitations has run violates the FDCPA.

242.    Thus, Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), and 1692f by misrepresenting the legal status and by threatening to file and actually filling a lawsuit on a time-barred suit, making it liable to the Plaintiff.

243.    "The statute of limitations in a mortgage foreclosure action begins to run from the due date for each unpaid installment, or from the time the mortgagee is entitled to demand full payment, or from the date the mortgage debt has been accelerated." [12]

---

[11] Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128 (2d Cir. 2017) ("Our holding is consistent with section 1692e, which prohibits a debt collector from "threat[ening] to take any action that cannot legally be taken." 15 U.S.C. § 1692e(5). It is unlikely that Congress would prohibit threatening to take an illegal action while permitting the additional step of actually taking the illegal action. See Currier, 762 F.3d at 535-36 (holding that under section 1692e, alleged illegal conduct "can also fairly be characterized as a threat to take [that illegal action]"). Our holding also coheres with decisions of our sister circuits, which have held that unfair or unconscionable litigation conduct violates section 1692f. See, e.g., Kaymark v. Bank of Am., N.A., 783 F.3d 168, 174 (3d Cir. 2015) (filing foreclosure complaint seeking attorney's fees not yet incurred); Currier, 762 F.3d at 535 (maintaining invalid lien on debtor's property); **Phillips v. Asset Acceptance, LLC, 736 F.3d 1076, 1079 (7th Cir. 2013) (filing suit to collect debt for which the statute of limitations had run.")** (emphasis added)

[12] In re Strawbridge, 2012 U.S. Dist. LEXIS 29751, 2012 WL 701031 [SDNY 2012], citing Plaia v Safonte, 45 AD3d 747, 748, 847 N.Y.S.2d 101 [2d Dept 2007]; Zinker v Makler, 298 AD2d 516, 517, 748 N.Y.S.2d 780 [2d Dept 2002]; Notarnicola v. Lafayette Farms, Inc., 288 AD2d 198, 199, 733 NYS2d 91 [2d Dept 2001]; EMC Mtge. Corp. v Patella, 279 AD2d 604, 605, 720 NYS2d 161 [2d Dept 2001]; Loiacono v. Goldberg, 240 AD2d 476, 477, 658 NYS2d 138 [2d Dept 1997])

244.  Once a mortgage debt is accelerated by a demand for the entire amount of the loan, the borrower's right to make monthly installments ceases, all sums becomes immediately due and payable, and the six-year statute of limitations begins to run on the entire mortgage debt.[13]

245.  New York City regulations require that a debt collector must provide a consumer with specific information about the consumer's rights regarding a time-barred account in every communication with the consumer.

246.  The unpaid installments and the entire loan became due on March 6, 2010 and the debt became time-barred on March 6, 2016.

247.  The Statute of Limitations to collect on this debt expired on March 6, 2016, therefore, misrepresenting the legal status and threatening legal action on this time-barred debt is a violation of the FDCPA.

248.  Upon information and belief, the Defendant knew that this deceptive debt collection technique would be particularly effective in pressuring unsophisticated consumers into settling debts, even those that would otherwise be time-barred.

249.  Caliber's lawyer-agent Rosicki's letter and fraudulent lawsuit was false, deceptive and misleading representations and means done in connection with the collection of the time-barred debt.

250.  Caliber's lawyer-agent Rosicki's letter and fraudulent lawsuit contained false representations of the character, amount and legal status of the debt;

251.  Caliber's lawyer-agent Rosicki's letter and fraudulent lawsuit threatened to take action that could not legally be taken and that cannot be taken, in violation of 15 U.S.C. §§ 1692e,

---

[13] See <u>Federal National Mortgage Assn v Mebane</u>, 208 AD2d 892, 894, 618 NYS2d 88 [2d Dept 1994]; <u>Clayton Nat'l, Inc. v Guldi</u>, 307 AD2d 982, 763 N.Y.S.2d 493 [2d Dept 2003]).

1692e(2)(A), 1692e(5), and 1692e(10).[14]

252. Said actions of the Defendant was unjust and wrong in the filling of legal action on time-barred debt.[15]

253. Upon information and belief, Caliber's lawyer-agent Rosicki's filing of time-barred debt in the State Action against the Plaintiff, far from being an isolated instance, is part of a policy and practice pursuant to which the Defendant intentionally files time-barred claims knowing that the vast majority of claims filed will result in default judgments or will be not be contested by unsophisticated pro-se consumers who are unaware of the CPLR § 202 and its impact upon the statute of limitations.

254. Available actions permitted under the law to collect on such time-barred debts <u>do not</u> include the filling of a legal action or accrual of legal fees.

255. The misrepresentation of the debt collector's ability to file a legal action on a time-barred debt is a violation of the FDCPA.

256. At the time that HSBC transferred the said home loan to the Defendant, it was aware that the Plaintiff was being represented by counsel.

257. Caliber Home Loans Inc.'s records, which it had received from HSBC, reflected that the

---

[14] Buchanan v. Northland Grp., Inc., 776 F.3d 393 (6th Cir. 2015). (A misrepresentation about the limitations period is a "straightforward" violation of § 1692ee(2)(A). The failure to disclose that partial payment on a time-barred debt would renew the creditor's ability to sue could mislead a consumer into paying and digging herself into a deeper hole. An unsophisticated debtor who cannot afford the settlement offer might nevertheless assume from the letter that some payment is better than no payment. This would not be true, since some payment is worse than no payment, as the general rule in Michigan is that partial payment restarts the statute of limitations clock, giving the creditor a new opportunity to sue for the full debt. In response to the argument that the court's interpretation would require debt collectors to give legal advice to every debtor about the statute of limitations, the court stated that "this is not a herculean task," as demonstrated by the fact that the collection agency had changed its letters to make the following disclosure under applicable circumstances: "The law limits how long you can be sued on a debt. Because of the age of your debt, LVNV Funding L.L.C. will not sue you for it, and LVNV Funding L.L.C. will not report it to any credit reporting agency."), McMahon v. LVNV Funding, L.L.C., 744 F.3d 1010 (7th Cir. 2014). (The court held that the consumers stated claims for relief under §§ 1692e and 1692f where the defendants sent dunning letters that did not disclose that the debts were time-barred and that made an "offer to settle" at a stated percentage savings off the current balance because, even without an actual threat of suit, "it is plausible that an unsophisticated consumer would believe a letter that offers to 'settle' a debt implies that the debt is legally enforceable.") Rawson v. Source Receivables Mgmt., L.L.C., 2012 WL 3835096 (N.D. Ill. Sept. 4, 2012) (complaint alleging that a dunning letter implied the debt was legally enforceable when it was actually barred by the statute of limitations stated a claim under the FDCPA; defendants' letter that threatened "further collection efforts" and encouraged the plaintiff "to make arrangements for payment" could arguably lead an unsophisticated debtor to believe that the debt was legally enforceable)

[15] Crawford v. LVNV Funding, LLC, 758 F.3d 1254, 2014 U.S. App. LEXIS 13221, 59 Bankr. Ct. Dec. 205, 25 Fla. L. Weekly Fed. C 92 (11th Cir. Ala. 2014)

Plaintiff was being represented by counsel

258.   Caliber's lawyer-agent Rosicki's further attempted to serve Plaintiff's counsel since they were aware that Plaintiff was represented by counsel; despite this knowledge, Caliber's lawyer-agent Rosicki's ultimately communicated directly with the Plaintiff in the November 10, 2017 collection notice which culminated in a lawsuit against him.

259.   Section 1692b of the FDCPA provides:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall –
>
> (6) After the debt collector knows the consumer is represented by an attorney with regard to the subject debt and has knowledge of, or can readily ascertain, such attorney's name and address, not communicate with any person other than that attorney, unless the attorney fails to respond within a reasonable period of time to the communication from the debt collector.
>
> Section 1692c of the FDCPA provides:
>
> (a)   COMMUNICATION   WITH   THE   CONSUMER GENERALLY.  Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt --
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer.

260.   The Defendant's conduct aggravated and harassed the Plaintiff.

261.   The Defendant knew or should have known that its actions violated the FDCPA.

262.   The Plaintiff received the initial letter from Caliber's lawyer-agent Rosicki's dated November 10, 2017 letter on or about November 15, 2017.

263. The Defendant then filed for foreclosure on December 6, 2017, which happened to be during the Plaintiff's thirty-day validation period, which overshadowed the Plaintiff's thirty-day validation rights, without providing an explanation that his rights would be preserved.

264. In <u>Ellis v. Solomon & Solomon</u>, *P.C.*591 F.3d 130 (2d Cir. 2010). The Second Circuit held that an FDCPA debt verification notice was overshadowed by the debt collector's service of a collection lawsuit on the consumer during the thirty-day period for a consumer to request verification of the debt, since the collector failed to explain or clarify in either the dun or a notice provided with the summons and complaint that the commencement of the lawsuit had no effect on the information conveyed in the debt verification notice.

265. On December 11, 2017 at night someone rang Plaintiff's door bell. The Plaintiff answered the door and asked the individual to identify himself. The man at the door would not identify himself and only stated that he was looking for a Mendel Reizes since he had foreclosure papers he needed to give to a Mendel Reizes.

266. The individual at the door stated that he can only serve Mendel Reizes once Mendel Reizes or the person accepting service identified himself. Plaintiff again asked the person at the door to identify himself, but the person stated that he could not do so.

267. On December 14, 2017 the same individual rang the Plaintiff's door bell. The Plaintiff answered the door and asked the person standing at the door to identify himself. The man at the door would not identify himself and only stated that he was looking for a Mendel Reizes since he had papers he needed to give to Mendel Reizes.

268. The man at the door further stated that he was hired by Caliber's lawyer-agent Rosicki to deliver a lawsuit on behalf of U.S Bank and that he would need to give it to Mendel Reizes

or someone who would identify themselves.

269.   Caliber's lawyer-agent Rosicki attempted service of the lawsuit during the thirty-day validation period overshadowed and contradicted the thirty-day validation rights that it provided to the Plaintiff in the initial letter.

270.   Caliber's lawyer-agent Rosicki failed to explain or clarify in either the dun or a notice provided with the summons and complaint that the commencement of the lawsuit had no effect on the information conveyed in the debt verification notice.

271.   Section 1692g(b) of the FDCPA states:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, **the debt collector shall cease collection of the debt**, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added)

272.   The Plaintiff faxed a dispute to Caliber's lawyer-agent Rosicki on December 11, 2017 (see attached letter and eFax receipt, Exhibit B), yet the Caliber's lawyer-agent Rosicki failed to cease collection of the debt and even attempted to serve the Plaintiff on December 14, 2017, December 16, 2017, and December 19, 2017 and further mailed a letter on December 22, 2017.

273.   Plaintiff disputed the debt under the FDCPA, thus precluding Defendant from taking any further action until Caliber's lawyer-agent Rosicki completed verification of the debt.

274.   The dispute rights afforded under the FDCPA were designed specifically to prevent the illegal and fraudulent activity that Caliber's lawyer-agent Rosicki has perpetrated in this case.

275. Plaintiff put the Defendant on notice that any foreclosure action would be illegal, time-barred and fraudulent.

276. Caliber's lawyer-agent Rosicki received the faxed dispute on December 11, 2017.

277. Defendant was put on notice and knew it could not serve Plaintiff with a lawsuit on a time-barred debt.

278. The Plaintiff's dispute letter sent on December 11, 2017 specifically stated; "**This letter should put your firm on notice that taking or threatening to take any legal action on this time barred debt will violate the FDCPA and make your firm liable for actual and treble damages. Filing a foreclosure on this debt is illegal. If your firm decides to sue for foreclosure despite being put on notice by this letter that any such action is illegal we will additionally sue your firm for fraud**."

279. Caliber's lawyer-agent Rosicki received the Plaintiff's dispute and knew that they must cease collecting on the debt until they can mail verification.

280. Caliber's lawyer-agent Rosicki knew that they would never be able to provide verification of the debt since it was time-barred and illegal to file the said foreclosure.

281. Caliber's lawyer-agent Rosicki overshadowed the Plaintiff's thirty-day verification rights when they attempted to serve him with a fraudulent law-suit during the thirty-day validation period.

282. Caliber's lawyer-agent Rosicki intentionally served plaintiff with a fraudulent lawsuit despite being foreclosed from doing so after being in receipt of Plaintiff's dispute.

283. Plaintiff notified Caliber's lawyer-agent Rosicki in writing within the thirty-day period described in the FDCPA that the debt was disputed. Defendants were obligated to cease collection of the debt, until it obtained and mailed plaintiff verification.

284. In addition to the fact that Defendants could never serve the Plaintiff with a lawsuit on a time-barred debt. Caliber's lawyer-agent Rosicki further knew that without an additional disclosure they could not serve the Plaintiff a lawsuit during the thirty-day validation period and that any such service would overshadow and contradict the thirty-day verification rights.

285. Caliber's lawyer-agent Rosicki additionally knew that they could not serve the Plaintiff once the debt had been disputed.

286. Caliber's lawyer-agent Rosicki cannot and have not provided Plaintiff with any verification of the debt.

287. The Defendant took multiple fraudulent illegal actions against the Plaintiff when it knew and should have known that there was no factual basis for its abusive actions,

288. Caliber's lawyer-agent Rosicki should have conducted the minimum due diligence required under New York law regarding abuse of process, frivolous pleadings, and misstating the amount, character and legal status of the Plaintiff's debt.

289. Caliber's lawyer-agent Rosicki abuse of process was in violation of 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1).

290. As a result of the Defendant's fraudulent legal action, Plaintiff has suffered pecuniary and non-pecuniary harm.

291. The Plaintiff's actual damages, without limitation, sleep deprivation, stomach pains, anxiety and difficulty in performing his work.

292. The Plaintiff also suffered damage to his credit and credit report.

293. The Plaintiff's damages also include the cost of retaining counsel to defend and dismiss the fraudulent State Action.

294.    The Plaintiff further alleges that Defendant's collection practices violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").  Such collection practices include, inter alia:

    (a)    Leaving messages for consumers, which fail to provide meaningful disclosure of Defendant's identity;

    (b)    Leaving messages for consumers, which fail to disclose that the call is from a debt collector; and

    (c)    Leaving messages for consumers, which fail to disclose the purpose or nature of the communication (i.e. an attempt to collect a debt).

295.    The FDCPA requires debt collectors identify themselves as such in all messages to prevent consumers from being tricked into communicating with debt collectors regarding a debt. The United States and Congress have found that:

> [T]his regulation directly advances the governmental interest of preventing abusive or deceptive debt collection practices such as anonymous telephone messages. Congress has specifically declared the prohibited activity of failing to make the necessary disclosures as inherently misleading. "The argument is that prohibiting debt collectors from leaving anonymous messages directly advances the governmental interests because allowing a debt collector to leave such messages could result in consumers being tricked into calling back and being forced to communicate with the debt collector, which could be an abusive practice since some consumers prefer written contact or to have an attorney or other representative engage in discussions with the debt collector on the consumer's behalf."…"Requiring a debt collector to identify itself as such appears to be a direct and narrow method of preventing consumers from being tricked into communicating with debt collectors regarding a debt. Furthermore, debt collectors have several forms of communication available to them in their efforts to collect a debt, including live conversation over the telephone, in person communication, and the mail. The FDCPA is no more extensive than necessary to achieve the asserted governmental interests of preventing abusive or deceptive debt collection practices such as anonymous telephone calls."
> Mark v. J.C. Christensen & Assocs., 2009 U.S. Dist. LEXIS 67724, 26-27, 2009 WL 2407700 (D. Minn. Aug. 4, 2009).

296.    To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection practices and names a non-exhaustive list of certain per se violations of false and deceptive collection conduct.  15 U.S.C. § 1692e(1) (16).  Among the per se violations prohibited by that section are: using any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e(10); the failure by debt collectors to disclose in initial oral communications that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, 15 U.S.C. § 1692e(11); and the failure by debt collectors to disclose in subsequent oral communications with consumers that the communication is from a debt collector, 15 U.S.C. § 1692e(11).

297.    By way of limited example only, on or about April 26, 2017, Defendant, attempted to contact Plaintiff by telephone in an effort to collect a debt; this was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). Defendant, a representative of Caliber left a message for the Plaintiff requesting a call back to the Defendant stating:

Message for Mendel Reizes, callback number is 1800 621-1437, calling from Caliber.

298.    By way of another limited example only, on or about May 16, 2017, Defendant, attempted to contact Plaintiff by telephone in an effort to collect a debt; this was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2). Defendant, a representative of Caliber by the name of  Nefertiti, left a message for the Plaintiff requesting a call back to the Defendant stating:

Name is Nefertiti, callback number is 1800 401-6587, calling from Caliber.

299.   At the time Plaintiff received the said messages, he did not know the identity of the caller.

300.   At the time Plaintiff received the said messages, he did not know that the caller was a debt collector.

301.   At the time Plaintiff received the said messages, he did not know that the call concerned the collection of a debt.

302.   Each of the messages is a "communication" as defined by 15 U.S.C. § 1692a(2).

303.   Defendant, as a matter of pattern and practice, leaves anonymous telephone messages for consumers which in effect trick consumers into calling back and being forced to communicate with the debt collector.

304.   Defendant's anonymous telephone messages mislead consumers into thinking that the message could reasonably pertain to a host of issues - including family or medical matters - which may be viewed by consumers as much more pressing, than a debt owed. The apparent purpose of these messages is to be vague enough to provoke the recipient to return the calls in haste. Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent.

305.   A message leaving any information concerning a debt is a "communication." 15 U.S.C. § 1692a(2). "Any information" is construed broadly in favor of consumers and includes a callback number or a reference number.[16]

---

[16] Halberstam v. Global Credit & Collection Corp., 2016 U.S. Dist. LEXIS 3567 (E.D.N.Y. Jan. 11, 2016) (Nothing permits the debt collector to leave a response with the third party that will induce the debtor to call him back. With the very limited authorized contact with third parties allowed by the statute, it is hard for me to see why [Defendant's representative] thought he could leave a call back number. The arguments defendant has advanced seem quite transparent.), Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346 (N.D. Ga. 2008). aff'd by Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 2009 U.S. App. LEXIS 22500, 22 Fla. L. Weekly Fed. C 179 (11th Cir. Ga. 2009. (It is a communication whether it is from a conversation directly between a consumer and a debt collector or indirectly, such as by a message left on a telephone answering device, or with a third party.), Foti v. NCO Financial Systems, Inc., 424 F.Supp.2d 643 (S.D.N.Y. 2006).(infra), Wideman v. Monterey Fin. Srvs., Inc., 2009 U.S. Dist. LEXIS 38824 (W.D.Pa May 7, 2009) (Same), West v. Nationwide Credit, Inc., 998 F. Supp. 642, 643 (W.D. N.C. 1998) (Same), Belin v. Litton Loan Servicing, LP, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410, 5 (M.D.Fla., 2006) (Same).

306. Defendant failed to provide Plaintiff with the notices required by 15 U.S.C. § 1692e(11), namely, by failing to advise Plaintiff that the communication was from a debt collector or that the Defendant was attempting to collect a debt.[17]

307. The only way for Plaintiff and/or any least sophisticated consumer to obtain the identity of the caller leaving the messages, and to ascertain the purpose underlying the messages, was to place a return call to the telephone number provided in the messages and speak with a debt collector employed by Defendant, and to provide the debt collector with personal information.

308. Defendant has engaged in a pattern of leaving messages without disclosing that the communication is from a debt collector.

309. All of the above-described collection communications made to Plaintiff by Defendant and other collection employees employed by the Defendant, were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(10), 1692e(11), and 1692f, amongst others.

310. Leaving "Anonymous Telephone Messages" in any form, violates the FDCPA, whether the anonymous telephone message is left during a conversation directly between a consumer and a debt collector or indirectly, such as an Anonymous Telephone Message left on a telephone answering device, or with a third party.[18]

---

[17] See Sclafani v. BC Servs., Inc., No. 10-61360-CIV, 2010 U.S. Dist. LEXIS 115330, 2010 WL 4116471, at *3 (S.D. Fla. Oct. 18, 2010.) ("If [the defendant] could not leave voice messages that simultaneously complied with the multiple applicable provisions of FDCPA, it should not have left the offending voice messages."), Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 2009 U.S. App. LEXIS 22500, 22 Fla. L. Weekly Fed. C 179 (11th Cir. Ga. 2009.) (The United States Court of Appeals for the Eleventh Circuit stated "In an oft-repeated statement from the Vietnam War, an unidentified American military officer reputedly said that "we had to destroy the village to save it." That oxymoronic explanation may be apocryphal, but the debt collection agency in this case offers up much the same logic to explain why it violated the Fair Debt Collection Practices Act: it was necessary to violate the Act in order to comply with the Act…"[I]f [the debt collector's] assumption is correct, the answer is that the [FDCPA] does not guarantee a debt collector the right to leave messages.")

[18] See Leyse v. Corporate Collection Servs., (2006 U.S. Dist. LEXIS 67719 (S.D.N.Y. Sept. 18, 2006) ("The FDCPA requires debt collectors identify themselves as such in all messages to prevent consumers from being tricked into communicating with debt collectors regarding a debt. Anonymous telephone messages mislead consumers in to thinking that the message could reasonably pertain to a host of issues - including family or medical matters - which may be viewed by consumers as much more pressing, than a debt owed. The apparent purpose of these messages is to

311. Plaintiff suffered injury in fact by being subjected to unfair and abusive practices of the Defendant.

312. Plaintiff suffered actual harm by being the target of the Defendant's misleading debt collection communications.

313. Defendant violated the Plaintiff's right not to be the target of misleading debt collection communications.

314. Defendant violated the Plaintiff's right to a truthful and fair debt collection process.

315. Defendant used materially false, deceptive, misleading representations and means in its attempted collection of Plaintiff's alleged debt.

316. Defendant's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to Defendant's collection efforts.

317. The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. The Defendant's false representations misled the Plaintiff in a manner that deprived him of his right to enjoy these benefits, these materially misleading statements trigger liability under section 1692e of the Act.

318. These deceptive communications additionally violated the FDCPA since they frustrate the consumer's ability to intelligently choose his or her response.

319. As an actual and proximate result of the acts and omissions of the Defendant, Plaintiff has suffered including but not limited to, fear, stress, mental anguish, emotional stress and

---

be vague enough to provoke the recipient to return the calls in haste. Leaving a message that deceptively entices a consumer to communicate with a debt collector when he is caught off guard is precisely the kind of abuse the FDCPA intended to prevent.")

acute embarrassment for which they should be compensated in an amount to be established by a jury at trial.

## AS AND FOR A CAUSE OF ACTION

*Violations of the Fair Debt Collection Practices Act brought by Plaintiff on behalf of himself and the members of a class, as against the Defendant.*

320.    Plaintiff re-states, re-alleges, and incorporates herein by reference, paragraphs one (1) through three hundred and nineteen (319) as if set forth fully in this cause of action.

321.    This cause of action is brought on behalf of Plaintiff and the members of four classes.

322.    Class A consists of (a) all individuals who have mailing addresses within the State of New York; (b) who within one year before the filing of this action; (c) were sent a collection letter in a form materially identical or substantially similar to the form letter sent by the Defendant to the Plaintiff; (d) regarding a debt that was time-barred by the applicable Statute of Limitations; and (e) the Plaintiff and the class members suffered actual damages by the Defendant's attempts to re-age the date of default; and (f) which was not returned by the postal service as undelivered; and (g) the Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(5), and 1692e(10).

323.    Class B consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to Plaintiff on or about July 20, 2017; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection letter was returned by the postal service as undelivered; (c) and Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e and 1692g(a)(1) for the use of any false representation or deceptive means to collect or attempt to collect any debt, for

misrepresenting the amount of the debt owed by Plaintiff and for failing to accurately state the amount of the debt in the initial communication.

324.  Class C consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter in substantially the same form letter as the letter sent to the Plaintiff on or about July 20, 2017 ; and (a) the collection letter was sent to a consumer seeking payment of a personal debt; and (b) the collection letter was not returned by the postal service as undelivered; (c) and the Plaintiff asserts that the letter contained violations of 15 U.S.C. §§ 1692e, 1692e(5), 1692e(8), 1692e(10) and 1692f, for engaging in false, deceptive, and unconscionable means by threatening an unintended action on a time-barred debt and for communicating or threatening to communicate to any person credit information which is known or which should be known to be false.

325.  Class D consists of all persons whom Defendant's records reflect resided in New York who received telephonic messages from Defendant within one year prior to the date of the within complaint up to the date of the filing of the complaint; (a) the telephone call was placed to a the consumer's home or similar party seeking payment of a consumer debt by leaving a message for the Plaintiff; and (b) the Plaintiff asserts that the telephone message was in violation 15 U.S.C. §§ 1692d, 1692e, 1692e(10), 1692e(11), and 1692f.

326.  Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

    A.  Based on the fact that form collection letters and form telephonic messages are at the heart of this litigation, the class is so numerous that joinder of all members is impracticable.

B. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class members. The principal question presented by this claim is whether the Defendant violated the FDCPA.

C. The only individual issue is the identification of the consumers who received such collection letters and such telephonic messages (*i.e.* the class members), a matter capable of ministerial determination from the records of Defendant.

D. The claims of the Plaintiff are typical of those of the class members. All are based on the same facts and legal theories.

E. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

327. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA. 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

328. If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

329.    Collection attempts, such as those made by the Defendant are to be evaluated by the objective standard of the hypothetical "least sophisticated consumer."

***Violations of the Fair Debt Collection Practices Act***

330.    The Defendant's actions as set forth above in the within complaint violates the Fair Debt Collection Practices Act.

331.    Because the Defendant violated the Fair Debt Collection Practices Act, the Plaintiff and the members of the class are entitled to actual damages in accordance with the Fair Debt Collection Practices Act.

WHEREFORE, Plaintiff, respectfully requests preliminary and permanent injunctive relief, and that this Court enter judgment in his favor and against the Defendant and award damages as follows:

A.  Statutory damages provided under the FDCPA, 15 U.S.C. § 1692(k);

B.  Attorney fees, litigation expenses and costs incurred in bringing this action; and

C.  Any other relief that this Court deems appropriate and just under the circumstances.

Dated: Woodmere, New York
April 26, 2018

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein, P.C.  (AF-9508)
Attorney At Law
**Attorney for the Plaintiff**
735 Central Avenue
Woodmere, New York 11598
Telephone: (516) 668-6945
Email: fishbeinadamj@gmail.com

Plaintiff requests trial by jury on all issues so triable.

_____/s/ Adam J. Fishbein_____
Adam J. Fishbein (AF-9508)